IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CV-4-KS

| | | |
|---|---|---|
| PHAREN BARRON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| FRANK BISIGNANO, Commissioner | ) | |
| of Social Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court for judicial review pursuant to 42 U.S.C. § 405(g) of a final administrative decision of the Social Security Administration, the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Pharen Barron ("Plaintiff") filed this action seeking judicial review of the denial of her application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties have fully briefed the matter pursuant to the Supplemental Rules for Social Security Actions, and oral arguments were heard on August 19, 2025. Having carefully reviewed the administrative record and the briefs submitted by the parties, the court remands the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

---

[1] Plaintiff's complaint names Carolyn W. Colvin in her official capacity as Acting Commissioner of Social Security. Frank Bisignano is now the Commissioner of Social Security and therefore is substituted as a defendant to this action. *See* Fed. R. Civ. P. 25(d).

<u>STATEMENT OF THE CASE</u>

Plaintiff applied for DIB and SSI on November 21, 2022, with an alleged onset date of September 28, 2022. (R. 11, 230–31.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 11, 130–31, 150–51, 180–81.) A hearing was held on May 16, 2024, before Administrative Law Judge ("ALJ") Kelly Davis, who issued an unfavorable ruling on August 6, 2024. (R. 11–28, 79–129.) On November 6, 2024, the Appeals Council denied Plaintiff's request for review. (R. 1–7.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. On January 3, 2025, Plaintiff filed the instant civil action, seeking judicial review of the final administrative decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

<u>DISCUSSION</u>

## I.    Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations

omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Albright v. Comm'r of SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* In making this determination, the ALJ must decide "whether the claimant is able to

3

perform other work considering both [the claimant's residual functional capacity] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).

### III.   ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). As a preliminary matter, the ALJ found Plaintiff meets the insured status requirements of the Act through December 31, 2027. (R. 14.) At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 28, 2022, the alleged onset date. (R. 14.) Next, the ALJ determined Plaintiff has severe impairments of migraine headaches, osteoarthritis and allied disorders, and obesity. (R. 14.) The ALJ further found Plaintiff has nonsevere mental impairments of depressive, bipolar, and related disorders, and trauma-and-stressor related disorders. (*Id.*)

At step three, the ALJ concluded Plaintiff's impairments are not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 16.) The ALJ expressly considered Listings 1.16 and 11.02. (R. 16–17.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff has "the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c) and

4

416.967(c)." (R. 17.) In making this assessment, the ALJ stated that she considered Plaintiff's symptoms and the evidence (both "objective medical" and "other") based on the requirements of 20 C.F.R. §§ 404.1529, 416.929, and SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017), and found Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. 17–18.) At step four, the ALJ concluded that Plaintiff is able to perform her past relevant work as a motorboat operator, as both generally and actually performed. (R. 21–22.) The ALJ concluded that Plaintiff has not been under a disability as defined by the Act from September 28, 2022, through the date of the decision. (R. 23.) The ALJ alternatively found at step five that "[b]ased on a residual functional capacity for the full range of medium work, considering the claimant's age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 203.29." (*Id.*)

## IV.    Plaintiff's Argument

Plaintiff argues the ALJ erred by failing to account for the vocationally limiting effects of Plaintiff's chronic migraine headaches in the RFC. (Pl.'s Br. [DE #14].) The Commissioner responds that the ALJ's finding that Plaintiff's migraines did not cause limitations beyond those in the RFC was supported by substantial evidence. (Comm'r's Br. [DE #16] at 6–17.) For the reasons explained below, the court agrees with Plaintiff and therefore orders remand to the Commissioner for further proceedings.

The ALJ found Plaintiff's migraines to be a severe impairment. (R. 14.) In her RFC assessment, the ALJ noted the following about Plaintiff's migraines:

> [Plaintiff] experiences migraines twice a week that start[] from her eyes, she is sensitive to light, gets nausea, and vomits in the first hour. She takes her medications in the first 20 minutes. If her medications are not available, it can last 16 hours. She lays down in a dark room due to sensitive eyes. She used a cold press in the past but that did not work.

(R. 18). The ALJ then determined Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms related to her migraines were not entirely consistent with medical and other evidence, noting the following:

> [Plaintiff] reported 7–8 migraine headaches per month that are usually right sided and last about three hours ([R. 820]). [Plaintiff's] headaches are usually associated with nausea and vomiting, photophobia, and phonophobia ([R. 820]). [Plaintiff] stated that the headaches responded well to Rizatriptan in the past, but she has since run out of this medication as well as medication for depression . . . . In fact, [Plaintiff] reported being out of all her medications for several months ([R. 822, a treatment note excerpt from 1/4/2023]), indicating that her symptoms were not as severe nor disabling as she alleges. Also, there does not appear to be any specific treatment for the migraines as of the alleged onset date, besides a prescription to treat it, noted in the condition/problem list, and that it is without aura.

(R. 19.) The ALJ found that Plaintiff's migraines "do provide for limitations in her abilities," but do not preclude work at the full range of the medium exertional level. (R. 20.)

During the hearing before the ALJ, the vocational expert ("VE") explained how employers would tolerate absenteeism and off-task time. (R. 127.) Specifically, the VE testified an individual could not maintain employment in the unskilled labor market if the individual had more than one absence per month or if the individual was off task for more than ten percent of the workday. (*Id.*)

"To enable meaningful judicial review, '[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the

6

pertinent legal requirements to the record evidence.'" *Woody v. Kijakazi*, No. 22-1437, 2023 WL 5745359, at *1 (4th Cir. Sept. 6, 2023) (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013); and then citing *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019)). In *Woody*, the Fourth Circuit held that an ALJ committed reversible error by failing to make specific factual findings regarding the frequency and severity of a claimant's headaches. *Woody*, 2023 WL 5745359, at *1 (first citing *Dowling v. Comm'r of SSA*, 986 F.3d 377, 388 (4th Cir. 2021); and then citing *Thomas*, 916 F.3d at 311–12). The *Woody* court explained:

> The vocational expert testified a hypothetical person would be precluded from maintaining full time employment if she were absent more than once a month. The record shows that, even after receiving treatment that reduced the frequency of her headaches, Woody still reported getting headaches about once a week. And although Woody told her physicians the severity of her headaches had lessened with treatment, the record does not establish whether her headaches nevertheless remained severe enough to cause her to be absent from work when they occurred. The ALJ did not make specific factual findings on that point.

*Woody*, 2023 WL 5745359, at *1.

The record here reflects that, even with prescriptions for Propranolol and Rizatriptan, Plaintiff continued to experience migraines weekly. (R. 935 (1/29/2024 treatment note).) Treatment notes from the previous year reflect that even when the prescription migraine medication helped reduce the frequency of headaches to four per month, the severity remained unchanged. (R. 770 (4/5/2023 treatment note).) The record further reflects that Plaintiff was receiving acupuncture treatments for her migraines. (R. 1031–41). ALJ Davis relied on a January 4, 2023, treatment note indicating that Plaintiff had run out of her migraine medication for several months

7

to discount Plaintiff's statements about her migraine symptoms. (R. 19 (citing R. 820)). But ALJ Davis did not explain how she reconciled subsequent treatment notes indicating Plaintiff still experienced at least weekly migraines while taking Propranolol and Rizatriptan (R. 770, 935) with evidence that Plaintiff went several months without prescription medication (R. 19) in finding that Plaintiff's migraines must not be as severe as alleged. *See* SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996) (ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved"); *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (ALJ cannot "simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding" (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010))).

The undersigned finds *Woody*'s reasoning persuasive given the similarity to Plaintiff's case. At step two, ALJ Davis found Plaintiff's migraines to be a severe impairment, which means the migraines "significantly limit[ ] [Plaintiff's] physical or mental ability to do basic work activities." *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). At no point, however, did the ALJ explain what those limitations are or how the RFC assessment for medium exertional work accounts for those limitations. (R. 20–21.) Importantly, the ALJ did not explain whether the frequency and severity of Plaintiff's headaches would cause Plaintiff to be off task while at work or to miss work altogether. *See Woody*, 2023 WL 5745359, at *1. As in *Woody*, "[t]he ALJ's failure to reach an 'express conclusion in the first instance' on the potentially dispositive issue of whether the frequency and severity of [Plaintiff's] headaches would cause her to be

absent from work more than once a month—or to explain how, despite any potential absences, the evidence supported [her] finding that the limitations included in the RFC sufficiently accounted for [Plaintiff's] impairments—is an error of law that necessitates remand." *See Woody*, 2023 WL 5745359, at *1.

<u>CONCLUSION</u>

For the reasons stated above, the Commissioner's decision is REVERSED and the case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

This 23rd day of February 2026.

KIMBERLY A. SWANK
United States Magistrate Judge

9